UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUADALUPE TORRES, <br><br> Plaintiff, <br><br> v. <br><br> LOYOLA UNIVERSITY MEDICAL CENTER, <br><br> Defendant. | No. 23 CV 17085 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Guadalupe Torres was a nurse at defendant Loyola University Medical Center. She alleges that coworkers discriminated against her based on her national origin and disability, creating a hostile work environment. She complained about this harassment to supervisors. She alleges that she was then terminated because of her national origin, disability, and age, and in retaliation for her complaints. Loyola moves to dismiss her claims.

I.  **Legal Standard**

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Facts

Plaintiff Guadalupe Torres worked at defendant Loyola University Medical Center as an Advanced Practice Registered Nurse from 2008 to 2020. [19] ¶¶ 8–9, 59.[1] From March 2013 until May 2017, Torres worked in the abdominal transplant department. [19] ¶¶ 11–13. One doctor in the department treated nursing staff and residents abusively, calling them "idiots" and "morons," throwing charts and vials of blood at them, and devaluing their worth. [19] ¶ 62(a)–(b), (f), (i). From March 2013 to May 2017, Torres notified the transplant program administrator, the human resources director, and the hospital CEO of this doctor's inappropriate behavior. [19] ¶ 62(c)–(e), (g)–(h). Torres experienced fear, severe anxiety, and panic attacks due to this work situation. [19] ¶ 62(i), (l).

In June 2016, Torres had brain surgery to remove a tumor. [19] ¶ 62(n). As a result, she suffered from short term memory loss and developed brain fog. *Id.* In May 2017, Torres transferred to the neurology department. [19] ¶ 13. Her coworkers and management were aware of her medical condition. [19] ¶ 30.

The other neurology department nurse, Lisa Millsap, was assigned to train Torres. [19] ¶ 62(o)–(p). From the start, Millsap bullied Torres and refused to train her. [19] ¶ 62(p). In team meetings, Millsap corrected Torres's pronunciation and attempted to embarrass Torres because she was Hispanic. [19] ¶ 62(x). In June and July 2017, Torres informed her boss about Millsap's treatment and her refusal to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [19] ¶ 1. The facts are taken from Torres's Amended Complaint, [19].

2

train Torres. [19] ¶ 62(s)–(t). Her boss encouraged Torres to "hang in there" since Millsap had a reputation for being a bully, acknowledging that Millsap had been removed from another department for bullying. [19] ¶ 62(t).

In August 2017, Torres approached the house nurse manager who encouraged her to speak with human resources. [19] ¶ 62(v). Torres also went to her new supervisor, but he was friends with Millsap and refused to do anything to help Torres. [19] ¶ 62(w). During her 90-day review, Torres again told her supervisor about Millsap's harassment and that he had a duty to correct Millsap's actions and make a safe work environment. [19] ¶ 62(x). He responded, "There are always two sides to every story." *Id.*

A second nurse also bullied Torres, questioning whether she knew what she was doing, calling her an idiot, and alienating her from the team. [19] ¶¶ 31–32. This nurse made derogatory comments when Torres presented undocumented patients during team meetings. [19] ¶ 62(aa). A third nurse made comments to Torres, referring to Hispanic patients as Torres's "uncle" and "family" while he threatened to call the Immigration and Naturalization Service on them. [19] ¶ 22. He mocked Hispanic people's accents in front of Torres. [19] ¶ 23. He also asked Torres if she was on welfare, if she had a green card, and if she was a "wet back." [19] ¶¶ 22–23.

Torres struggled to learn her new role because of the harassment and her ongoing memory issues from brain surgery. [19] ¶ 29. In November 2017, she requested a reasonable accommodation because she required additional and repeated training. *Id.* Her supervisor said he would talk to Millsap. *Id.* Torres did not receive

3

an accommodation. [19] ¶ 95. From 2017 through April 2020, Torres attended several medical appointments that sometimes required her to leave work, for which she obtained approval. [19] ¶ 52. Millsap was annoyed that Torres left work early. [19] ¶¶ 52, 54.

In December 2017, Torres went to the house nurse manager twice about the three coworkers' harassment, who recommended that Torres go to human resources. [19] ¶¶ 33, 35. Torres called human resources but never heard back. [19] ¶ 34. She also notified one of the harassing nurse's managers but did not hear back. [19] ¶ 37.

In early December 2017, Torres had a mental breakdown due to the ongoing harassment, which was witnessed by one of the department's doctors. [19] ¶¶ 40–41. The doctor notified Torres's supervisor and another doctor about the harassment. [19] ¶¶ 41–42. Torres sought psychological care because the environment was so severe. [19] ¶ 43. The second doctor sent an email to all employees and administrators in the department stating that the medical staff and administration were fully aware of the hostility and harassment that was taking place. [19] ¶ 44. This doctor also told Torres that he would address Millsap's behavior with her. [19] ¶ 45.

In January 2018, Torres's supervisor emailed her asking her to explain what happened with the nurses and her breakdown. [19] ¶ 49. Torres replied reiterating the constant harassment and lack of support from her supervisor to put a stop to the bullying. [19] ¶ 50. Torres's supervisor never responded. *Id.*

In December 2018, Millsap began going through Torres's work activity and reviewing her work when Torres was away from her desk. [19] ¶¶ 46–48, 51. On two

4

occasions, in December 2018 and December 2019, Millsap submitted reports questioning Torres's clinical judgment, intending to get Torres disciplined. [19] ¶¶ 47, 51. The reports prompted Loyola to open an investigation of Torres. [19] ¶ 48. After being notified of the second report in December 2019, Torres spoke with her supervising physician to explain the details of the report and the rationale of Torres's treatment choice. [19] ¶ 55. He told her to not worry and that she had made the right decision. *Id.*

On two occasions, Torres requested reimbursement for her nursing licenses, which was a common practice in the neurology department. [19] ¶ 25. In June 2017, she was told there were no funds for reimbursement, but Millsap and other nurses were reimbursed. [19] ¶ 62(r). In December 2019, she sent multiple emails to the department manager but never heard back and was never reimbursed. [19] ¶¶ 56–57. She also alleges that she requested a clinician lab coat and business cards that were afforded to others in the department, but did not receive them for years after starting in her position. [19] ¶¶ 58, 62(q).

III. Analysis

A. Statute of Limitations

Loyola argues that Torres's Title VII national origin discrimination, Title VII hostile work environment, Americans with Disability Act, and Age Discrimination in Employment Act claims are time barred, because they were not raised with the relevant administrative agency within 300 days. [21] at 12–14. A plaintiff's failure to exhaust administrative remedies is an affirmative defense that she need not anticipate in her complaint, but dismissal is appropriate when a plaintiff "pleads

5

herself out of court by alleging facts that are sufficient to establish the defense." *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (dismissal is appropriate when "a complaint plainly reveals that an action is untimely under the governing statute of limitations").

Before a plaintiff may sue under Title VII, the ADA, and the ADEA, she must first file a charge with the EEOC. 42 U.S.C. § 2000-5(e)(1); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). In Illinois, this charge must be submitted within 300 days after the allegedly unlawful employment practice occurred. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014).

Because Torres filed a charge against Loyola on October 26, 2020, [19] ¶ 6, Loyola argues that any events occurring before December 31, 2019, cannot form the basis of Torres's claims, [21] at 13. Torres argues that the continuing violation doctrine applies to her claims because the alleged acts were not discrete or independently actionable but demonstrate Loyola's pattern of discrimination. [30] at 13.

Hostile work environment claims are distinct because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). So long as any incident contributing to the hostile work environment occurred within the statutory period, the claim is considered timely under the continuing violation doctrine. *Id.* at 118. Here, the only alleged conduct that occurred within the actionable period was Torres's termination in April 2020. Torres argues that her

6

EEOC charge must be read liberally to include her termination as part of the hostile work environment. [30] at 7–8. But discrete discriminatory acts like retaliation and termination constitute separate unlawful employment practices. *Id.* at 114. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Charges based on discrete acts are time barred if not filed within the 300-day window even if they relate to acts alleged in timely filed charges. *Id.*

Torres's termination is a discrete discriminatory act that cannot be used to "pull in" otherwise time barred acts—the national origin discrimination and hostile work environment at Loyola from 2013 to 2019, and the failure to provide a reasonable accommodation in November 2017. *See id.* Torres's Title VII and ADA claims based on conduct that occurred before the actionable period are time barred and dismissed.

Torres argues that equitable estoppel applies and tolled the statute of limitations. [30] at 5–9. This doctrine applies when a "defendant takes active steps to prevent a plaintiff from suing in time." *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000). Torres does not allege that Loyola took such steps; her argument is that the discriminatory bullying itself should estop Loyola from relying on the limitations period. But this misunderstands the specificity required for estoppel. There are no allegations or arguments that the bullying blocked her from filing a charge with the EEOC. And although a plaintiff is not required to plead around a defense, and the prospect of equitable estoppel is among the reasons why resolving defenses on a Rule 12(b)(6) motion is disfavored, here, Torres provides no

7

reason to think discovery will reveal a basis for estoppel. Torres's internal complaints may have been met with silence, and even a recommendation to "hang in there," but that passive response falls short of discouraging or concealing the available administrative process.

As for Torres's age discrimination claim, Torres alleges that she was terminated for her age in 2020, during the actionable period. [19] ¶¶ 82, 87. Torres's ADEA claim is not time barred.

### B. Title VII, ADA, and ADEA Discrimination

The standard for pleading an employment discrimination claim is low. In a termination case, a plaintiff need only allege that the defendant fired her because of her protected class. *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019). "[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her [protected class], there is no further information that is both easy to provide and of clear critical importance to the claim." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 782 (7th Cir. 2007). Claims for "employment discrimination on the basis of race, sex or some other factor may allege the defendant's intent quite generally." *Id.* at 781. Torres alleges that she was terminated because of her national origin, disability, and age. [19] ¶¶ 61, 66, 87. She need not add more to successfully state a claim.

The parties used the *McDonnell Douglas* burden-shifting framework in their briefs. That is a tool to organize evidence, not assess the adequacy of a complaint under Rule 8. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–11 (2002) (holding that *McDonnell Douglas* test "is an evidentiary standard, not a pleading standard.").

8

Loyola argues that because Torres has alleged that Loyola said her position was eliminated due to "institutional financial loss," Torres has pled herself out of court by providing a legitimate, non-discriminatory reason for her termination. [31] at 7. Not so. Torres still has an opportunity to show that this explanation was pretextual, and her allegation that Loyola hired an individual outside of Torres's protected classes for the same department suffices to state a plausible claim for relief. Even if Torres had not alleged a comparator, she does not need to allege each evidentiary element of a legal theory to survive a motion to dismiss. *Freeman*, 927 F.3d at 965.

Loyola's motion to dismiss Torres's national origin, disability, and age discrimination claims as to her termination is denied.

C.  **Title VII Retaliation**

To state a claim for Title VII retaliation, Torres must allege: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023).

Torres alleges that she "engaged in a statutorily protected activity" when she repeatedly complained to her supervisors, managers, human resources, and coworkers about the harassment. [19] ¶¶ 29, 33–35, 37, 41, 44–45, 50, 55, 62(c)–(e), 62(s)–(t), 62(v)–(x), 62(cc)–(dd), 100. Loyola argues that "these complaints amounted to no more than simply a complaint about some situation at work" and are not statutorily protected. [21] at 20. Indeed, "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or

9

providing facts sufficient to create that inference, is insufficient." *Cole v. Board of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016).

Only some of Torres's complaints included that she was harassed because of her national origin. For example, Torres alleges that she complained about the abusive doctor in the abdominal transplant department, but that doctor's behavior was based on her perceived incompetence of nurses and residents, not based on a protected class. *See* [19] ¶¶ 62(a)–(i). Similarly, Torres alleges that after Millsap's second report, Torres spoke with her supervising physician about her rationale for the reported medical decision, not that Millsap's report was due to Millsap's animus toward Torres's national origin. [19] ¶ 55. Torres's complaints about the abdominal transplant doctor's behavior and Millsap's second report are not Title VII-protected activities.

Torres alleges that she reported Millsap's and the two other nurses' behavior multiple times. [19] ¶¶ 33–35, 37, 41, 44–45, 50, 62(s)–(t), 62(v)–(x), 62(cc)–(dd). This behavior included Millsap's attempts to humiliate and belittle Torres because she is Hispanic, another nurse's hostile comments about undocumented immigrants, and a third nurse's use of slurs associated with Torres's national origin and jokes about Mexicans and other Hispanic cultures. [19] ¶¶ 22–23, 62(y), 62(aa). These complaints are protected activities under Title VII, and termination is an adverse employment

action.[2] *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016).

Loyola also argues that Torres does not allege facts that support there was a causal link between her reports and termination. [21] at 20–21. Torres need not present evidence of causation at the pleading stage. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). But "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). "If the best a plaintiff can do is allege that [s]he engaged in protected activity and then, years later, the employer took an adverse action against [her], the claim may not be permitted to proceed." *Id.* (citing *Carmody v. Board of Trs. of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014) (unexplained three-year gap between employee's report and his termination made state-law retaliation claim implausible)). Torres alleges that she complained about the national origin discrimination and harassment in 2017, but her position was not eliminated until 2020. While "no bright-line timing rule can be used to decide whether a retaliation claim is plausible," Torres's allegations do not demonstrate an ongoing campaign of retaliation in the intervening period that plausibly establishes a link

---

[2] Torres alleges that in or about December 2019, she requested reimbursement of her DEA license, but her requests went unanswered, and she was never reimbursed. [19] ¶¶ 56–57. If the failure to reimburse occurred on December 31, 2019, it falls within the actionable period. But it was not an adverse action—it was a usual practice, but Torres does not allege it was not discretionary. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 980 (7th Cir. 2008) ("The denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary.").

11

between her protected complaints and subsequent discharge.³ *See id.* at 829. Without more, Torres has not stated a plausible claim for retaliation. Loyola's motion to dismiss Torres's retaliation claim is granted.

## IV. Conclusion

Plaintiff's Title VII national origin discrimination and hostile work environment claims based on conduct prior to the actionable period and plaintiff's ADA claim for failure to provide a reasonable accommodation are dismissed with prejudice as time barred.⁴ Plaintiff's Title VII retaliation claim is dismissed without prejudice. Plaintiff's national origin, disability, and age discrimination claims based on her termination survive.

ENTER:

                                                         Manish S. Shah
                                                         United States District Judge

Date: December 9, 2024

---

³ The only conduct alleged between 2017 and 2020 is that Millsap filed two reports against Torres questioning her medical judgment, which Loyola investigated. [19] ¶¶ 46–48. While Torres alleges that Millsap's reports were in retaliation for her complaints, [19] ¶ 51, Torres does not allege that Loyola's investigation resulted in any action against her. These incidents do not support an inference that Torres's "employer engaged in a pattern of antagonism in the intervening period." *See Carlson*, 758 F.3d at 829.

⁴ If a plaintiff fails to exhaust administrative remedies, the complaint is dismissed without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). But because repleading would not cure untimeliness, untimely claims are dismissed with prejudice.